UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WARRIOR LACROSSE, INC.,
A Michigan Corporation,

        Plaintiff,

                                         Case Nos. 04-70363 & 04-71842
v.                                      Honorable Julian Abele Cook, Jr.

STX, L.L.C., a Maryland Limited
Liability Company,

        Defendant.

ORDER

On January 30, 2004, the Plaintiff, Warrior Lacrosse, Inc. ("Warrior"), filed a Complaint with this Court, in which it accused the Defendant, STX, L.L.C. ("LLC"), of infringing upon two of its patents; namely, U.S. Patent No. 6,561,932 ("932 Patent") and U.S. Patent RE 38, 216 ("216 Patent"). On October 12, 2005, Warrior filed a motion for summary judgment, arguing "that the 216 Patent is not invalid or unenforceable in view of any purported activities by Robert J. Rule." Two days later, STX filed a motion, seeking the entry of a partial summary judgment of unenforceability of the "216 Patent" due to the "inequitable conduct" of Warrior's attorney, John S. Artz ("Artz"), who, in its opinion, had (1) intentionally mischaracterized an alleged critical prior art reference and (2) knowingly failed to disclose information that contradicted his patent application to the United States Patent and Trademark Office ("PTO"). On February 8, 2006, Warrior filed another motion, in which it sought to obtain leave from the Court to file a "supplemental brief in opposition to STX's motion for partial summary judgment of un unenforceability of the '216 Patent' due to inequitable conduct."

1

I.

Warrior's lacrosse head, "Cobra," was developed with sidewalls that curved downward ("offset") from the sidewall plane of traditional straight walled lacrosse heads. During its development, Warrior applied for patents to protect its "Cobra" technology. In May 1995, Warrior filed a design application, and, thereafter, submitted a utility patent application in August 1995 which was subsequently issued as U.S. Patent No. 5,568,925 ("925 Patent"). The "216 Patent," a reissue of the "925 Patent," was filed in October 1998 and issued in August 2003.

A.    Artz's representations to the PTO during the "216 Patent" application

According to STX, Artz knowingly misrepresented to the PTO during the prosecution of the "216 Patent" that a lacrosse stick, known as the "Rule Stick," consisted of a straight head. STX also contends that he made this false representation after the written minutes of a Rules Committee meeting of the United States Intercollegiate Lacrosse Association (USILA) on May 15, 1983 had been delivered to the PTO. During this meeting of the USILA, a new lacrosse head design ("Rule Stick") was presented to the Committee by Robert Rule ("Rule") who had been employed as a consultant for Brine, Inc. for nearly two decades from the mid 1970's until 1990. Although Rule had attended various USILA Committee meetings to make presentations on behalf of Brine, Inc., his principal neither permitted him to share any of the Company's product developmental information with its competitors nor authorized him to make any presentations with the specific approval of Bill Brine and Peter Brine. During one of his presentations at the 1983 Committee meeting, he made reference to an "offset stick," which was, in essence, a hammer with a bent handle. However, Warrior submits that Rule, when subsequently questioned about this presentation during a deposition, was unable to (1) recall the substance of the 1983 meeting or any

2

of the particular details of his presentation, or (2) confirm or deny whether the stick handle or the lacrosse head was bent.  In challenging Rule's credibility and credentials, Warrior asserts that he proffered some photographs of an alleged "cut-up" lacrosse head to the USILA Rules Committee on behalf of Brine without any credible documentation or reliability to support his presentation.[1]

Turning its attention to the claimed misconduct by Warrior's counsel, STX maintains that Artz, in responding to a rejection of pending claims in the "216 Patent" application by the PTO, improperly advised the examiner that the lacrosse stick would consist of an "offset handle" rather than an "offset head."  Moreover, STX insists that Artz knew that this lacrosse stick had a straight handle and an "offset head."  This statement, according to STX, was a material misrepresentation, noting that the examiner had initially rejected Warrior's "216 Patent" claims but subsequently allowed them after relying upon Artz's disclosure of the "offset head" in the 1983 minutes.

B.    Warrior's "216 Patent" Reissue Declarations

Warrior submitted a reissue declaration by its inventors,  David Morrow ("Morrow") and Phillip Naumburg ("Naumburg"), both of whom declared that they had claimed less than they had a right to assert in the "925 Patent."  However, this application was rejected as being defective since it did not explain why the original application had not included the reissue claims.

In their declarations, Morrow and Naumburg proclaimed that they were the first to develop a lacrosse head "having a significant curvature in the sidewall or having a sidewall upper surface that does not lie substantially in a plane defined by the handle axis."  *See* STX's Mot. for Partial Summ. J. of Unenforceability of 216 Patent due to Inequitable Conduct at Exh. 15.  Each of them

---

[1]According to STX, Rule produced a photograph which depicted an STX lacrosse head rather than a Brine lacrosse head.

also asserted that the "925 patent required that the sidewall curved downward (away from the plane) and then curved back upward (toward the plane)." *Id.* According to these inventors, the newly added claims only required that the sidewall curve away from the plane, therefore obviating the need to note that the sidewall curved back upward as well. However, during his deposition, Naumburg acknowledged that having the sidewall curve back up was a "slightly essential element" of the invention. Thus, it is the position of STX that Artz's submission of the reissue declarations to the PTO was false because the invention always required that the sidewalls curve back up, rather than only curving downward, as mentioned in the reissue declaration.

C.    1983 Meeting Minutes

The minutes of the 1983 meeting had been prepared by the Chairperson of the Rules Committee, Jack Emmer, who testified during his deposition that he took all of the necessary steps to keep the presentations of new equipment confidential in order to prevent its disclosure to competitors. Emmer also acknowledged that it was his practice to prepare two sets of minutes, one of which was retained and labeled as confidential, whereas the other version was accessible to the general public. According to him, the confidential version of the minutes was circulated only to the members of the Committee, whereas the other version was issued after the confidential data was redacted prior to its distribution. According to Emmer, his version of the 1983 Committee minutes, which was submitted to the PTO by Warrior, was confidential. A reading of the 1983 meeting minutes indicates that Rule made his presentation to the Committee on behalf of his employer, Brine.

D.    The "183 Patent"

The "183 Patent" claims pre-date the "216 Patent" claims. The application for the design,

4

which resulted in the "183 Patent," consisted of six figures that illustrated Warrior's design. Part of the novelty of the design in the "183 Patent" is reflected in the downward curvature of the lower rims of the sidewalls, as well as the upward curvature of the lower rims of the sidewalls.

Shortly after the filing of the "183 Patent" application, Warrior's prosecuting attorney, Robert Collins ("Collins"), became aware of a new lacrosse head that had been recently introduced by STX. On the basis of this information, Collins concluded that the new lacrosse head had incorporated each of the points of novelty within the "183 Patent." In June 1995, Warrior filed a "Petition to Make Special" in an effort to expedite the examination of the application to the PTO by relying upon the declarations of Morrow and Collins, both of whom opined that STX's lacrosse head ( the "Raptor") had infringed upon its "183 Patent" design. STX strongly disagrees, contending that the inventors, Morrow and Naumburg, had collectively agreed that the sidewall design of the "Raptor" was different from the design in the "183 Patent." Ultimately, and based upon the declarations of Morrow and Collins, Warrior's "Petition to Make Special" was granted and the patent was issued by the PTO on December 3, 1996.

## II.

The Supreme Court has opined that "[o]ne of the principle purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses. . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). At the same time, the language within Rule 56© provides that a motion for summary judgment should be granted only if a party "show[s] that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Here, the burden is on the movant to demonstrate the absence of a genuine issue of a material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In assessing a summary judgment motion, the Court must examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the non-moving party. Fed. R. Civ. P. 56©; *see United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984). It is not the role of the Court to weigh the facts. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435-36 (6th Cir. 1987). Rather, it is the duty of the Court to determine "whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Hence, the moving party can show that a genuine factual issue is lacking if it presents evidence which is sufficient to make the issue "so one-sided that [it] must prevail as a matter of law," *id.* at 252, or point to a failure by the non-moving party to present evidence "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Upon such a showing, the non-moving party must act affirmatively to avoid the entry of a summary judgment. Fed. R. Civ. P. 56(e). A mere scintilla of supporting evidence is insufficient. *See Anderson*, 477 U.S. at 252, *quoted in Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). Indeed, "[i]f the evidence is merely colorable or is not significantly probative summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

### III.

Under the principle of collateral estoppel, once a court has resolved a contested issue of fact or law that is essential to a judgment, the decision is conclusive in any subsequent litigation which

6

is based upon a different cause of action involving a party to the prior litigation. *United States v. Mendoza,* 464 U.S. 154, 158 (1984). The application of collateral estoppel is appropriate only if (1) the issue to be resolved is identical to the one decided in the first law suit, (2) the issue was actually litigated in the initial litigation, (3) a resolution of the issue was determinative in the first case, and (4) the parties had a full and fair opportunity to litigate the issues in the first action. *Arkla, Inc. v. United States,* 37 F.3d 621, 624 (Fed. Cir. 1994).

Some courts have permitted collateral estoppel arguments to be heard despite not being pled and only being raised for the first time in dispositive motions. *Curry v. City of Syracuse*, 316 F.3d 324, 330-31 (2nd Cir. 2003) (addressing collateral estoppel arguments raised for first time in reply memorandum filed after summary judgment motions were pending); *Lowerinson v. County of San Diego,* 26 Fed. Appx. 720, 722 (9th Cir. 2002) (affirmative defenses are not waived even if raised for first time in pre-trial dispositive motions); *Stoebner v. Parry, Murray, Ward & Moxley,* 91 F.3d 1091, 1093-94 (8th Cir. 1996) (collateral estoppel defense raised for first time in summary judgment motion).

Warrior submits that STX unsuccessfully litigated the same allegation and issue against Brine in an earlier lawsuit. It is Warrior's contention that the issue in *Brine* and in this litigation (i.e., whether the "offset stick," to which reference was made in the 1983 minutes, pertained to an "offset handle" or an "offset head.") is identical. Warrior takes the position that STX, having had a full and fair opportunity to litigate this dispute in the prior lawsuit, is collaterally estopped from relitigating the same issue in the current litigation.

In 1999, Brine sued STX for its infringement of two patents (*Brine, Inc. v. STX, L.L.C,* No. 99-40167 (D. Mass. 2004)). STX denied the charges, contending that Brine's patents were

7

unenforceable because, among other things, of its failure to disclose material information to the USILA Committee in 1983 (i.e., the lacrosse "offset stick" had an "offset head" and not an "offset handle). During the course of the trial, the district court judge determined that Brine had not engaged in any inequitable conduct.[2]  In rendering his decision, the judge concluded that STX had failed to prove that *Brine* intended to deceive the PTO by clear and convincing evidence.  However, this ruling in *Brine* did not include any findings regarding one of the issues to be determined in this case (namely, whether the 1983 meeting minutes referred to an "offset head" or an "offset handle").  Although the issue in the present matter is identical to the earlier law suit, the *Brine* litigation neither addressed nor answered it, thereby leaving no judgment to be estopped from being re-litigated.  Thus, this Court determines that there is no legitimate basis upon which to conclude that STX is, or should be, collaterally estopped from addressing the question of whether the 1983 minutes did or did not address an "offset handle" or an "offset head."

IV.

According to 35 U.S.C. § 282, patent claims are presumed to be valid.   In order to successfully challenge the efficacy of a patent, an opponent must demonstrate clear and convincing evidence of invalidity.  *Lisle Corp. v. A.J. Mfg. Co.,* 398 F.3d 1306, 1316 (Fed. Cir. 2005). Uncorroborated oral testimony, especially from an interested person, does not - without more - provide the requisite clear and convincing evidence that is necessary to invalidate a patent. *Juicy Whip, Inc. v. Orange Bang, Inc.,* 292 F.3d 728, 742 (Fed. Cir. 2002).

---

[2] The judge concluded that "STX has failed to satisfy its burden of proving that Brine engaged in inequitable conduct before the PTO during the prosecution of the '026 patent.  First, STX has not shown, as a threshold matter, Brine's intent to mislead the PTO. . . . The facts and circumstances surrounding Brine's application for the '026 patent do not suggest inequitable conduct. . . ." The United States Court of Appeals for the Federal Circuit affirmed.

Here, Warrior contends that the 1983 Committee meeting minutes were not public, and hence, did not constitute prior art because of their confidential status. STX challenges this position by Warrior, arguing that a "prototype" offset head, which embodied certain elements of the "216 Patent" claims, had been created and was thereafter presented to the Rules Committee in 1983. STX also contends that the 1983 meeting minutes are publicly disclosed prior art because Warrior had disclosed them to the PTO.

This Court has not been presented with any evidence that STX deposed Rule or obtained a sample of his "prototype" head. Rather, it appears that STX has relied upon the integrity of its photographs of alleged lacrosse head models to advance its position on this issue. Although the evidence in this case suggests that Rule would not have proffered a STX lacrosse head to the Rules Committee because of his connections to Brine, his letters to a variety of individuals clearly suggest that the "offset" stick, which was presented to the Committee by him during the 1983 meeting on behalf of Brine, was constructed from a STX lacrosse head. Additionally, it is unclear whether the meeting minutes were confidential given that the contents of the meetings were allegedly available upon request. Furthermore, it cannot be definitively determined that the testimony of the witnesses submitted by STX was sufficiently without a difference in interpretation. Consequently, a genuine issue of a material fact exists as to whether (1) the 1983 meeting minutes were confidential, (2) the alleged lacrosse head constitutes prior art, and (3) the testimony of STX's witnesses is corroborated.

V.

Patent applicants have a duty to prosecute patent applications before the PTO with candor, good faith, and honesty. *Molins PLC v. Textron, Inc.,* 48 F.3d 1172, 1178 (Fed. Cir. 1995). The

term, "inequitable conduct" has been defined by the Federal Circuit Court of Appeals as including affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information, with an intent to deceive. *Molins PLC v. Textron, Inc.,* 48 F.3d 1172, 1178 (Fed. Cir. 1995). Materiality, as well as an intent to deceive are factual inquiries, all of which must be proven by clear and convincing evidence. *Life Technologies, Inc. v. Clontech Labs, Inc.,* 224 F.3d 1320, 1324 (Fed. Cir. 2000). Information is material if there is a substantial likelihood that a reasonable patent examiner will consider the information to be important when deciding whether to allow the application to be issued as a patent. *Molins,* 48 F.3d at 1179. Evidence of a breach of duty claim must be material and undertaken with an intent to deceive the PTO. *Frazier v. Roessel Cine Photo Tech, Inc.,* 417 F.3d 1230, 1234 (Fed. Cir. 2005). A violation of this duty, when coupled with an intent to deceive or mislead the PTO, satisfies the inequitable conduct standard, which if established, renders the patent unenforceable. *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.,* 326 F,3d 1226, 1233 (Fed. Cir. 2003).

If the threshold levels of materiality and intent are satisfied, the determination of whether inequitable conduct occurs lies within the discretion of the trial judge. *Syntex (U.S.A) LLC v. Apotex, Inc.,* 407 F.3d 1371, 1378 (Fed. Cir. 2005). In analyzing inequitable conduct under the materiality and intent prongs, a court is encouraged to employ a "balancing test." *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,* 120 F.3d 1253, 1256 (Fed. Cir. 1997). The more material the omission or misrepresentation, the lower the level of intent is required to establish inequitable conduct. *Id.* Inasmuch as direct proof of wrongful intent is rare, it is commonly inferred from the totality of the conduct in the prosecution of the patent application. *Baxter Int'l, Inc. v. McGaw, Inc.,* 149 F.3d 1321, 1329 (Fed. Cir. 1998). In those instances in which the information withheld

is material and the applicant knew, or should have known, of the materiality, the task of overcoming an inference of an intent to mislead will be difficult - but not impossible - to overcome. *Bristol-Myers*, 326 F.3d at 1239.

STX argues that during the prosecution of the "216 Patent," Warrior had an abundant amount of evidence in its possession (including documents, photographs, affidavits, and sworn testimony) that was material to the "216 Patent" application. However, STX submits that Warrior chose to disclose only the 1983 minutes to the PTO which omit most of the significant detail. Furthermore, STX contends that Artz informed the PTO that the presentation made by Rule was irrelevant because the lacrosse stick consisted of a bent handle, and not an "offset" head. STX also asserts that Artz intentionally concealed correspondence from the PTO, as well as photographs, prior declarations and testimony that he had garnered from the Brine litigation

Warrior emphatically denies having committed any wrongdoing and affirmatively asserts that (1) it conducted a thorough investigation of the information provided by Rule during the prosecution of the 216 Patent and concluded that it was irrelevant, and (2) inasmuch as the contents of the 1983 meeting are confidential, the minutes therefrom cannot form the basis for any inequitable conduct claim. Accordingly, it argues that the thoroughness of the investigation, along with the disclosure of non-public information to the PTO, demonstrates a clear lack of intent to deceive.

Artz also filed a reissue declaration, in which he incorrectly stated that Naumburg believed that the invention was broader than the claims in the original 925 patent. STX contends that Naumburg's declaration was also material because this information was important in the determination of the re-issuance of the 216 Patent. Warrior claims that although it timely filed an

11

application to reissue the 925 Patent on the basis that the claims were too narrow, it inadvertently failed to properly make reference to a co-pending application.

Naumburg initially executed a reissue application declaration, in which he acknowledged having less than he had the right to assert in the "216 Patent." Warrior contends that the examiner objected to the priority claim because the declaration contained a typographical error, which was subsequently corrected. Upon resubmission, the declaration was rejected once again because the statement of errors was deemed to be "insufficient" which required the applicant to provide a declaration noting the defect in the claims. Upon correction, the reissue declaration was declared to be legally correct.

Warrior contends that Naumburg's declaration was not false when he signed the declaration because it was his intention to broaden his patent in order to emphasize the lowering feature. Specifically, Naumburg believed that, while the preferred embodiment of the patent disclosed sidewalls that curved down and then curved back up, the most important aspect of the invention was that the sidewalls curved downward or were lowered with respect to the plane. Thus, Warrior submits that Naumburg's declaration was not false.

The information pertaining to the 1983 meeting minutes was material in this case because it influenced the examiner's decision to approve the reissue patent application. Therefore, the first prong of the two-step analysis has been met. However, STX has failed to satisfy its burden of proving that the evidence demonstrates a level of an intent to mislead the PTO. Such a demonstration must be made by clear and convincing evidence, and STX has not satisfied this burden. Accordingly, there is a factual dispute regarding Artz's intentions when submitting the patent application to the PTO. Consequently, STX is unable to demonstrate that Artz intentionally

12

mislead the PTO. Therefore, a summary judgment cannot be granted because there is a genuine issue of a material fact as to whether (1) Artz did or did not mislead the PTO, and (2) his challenged conduct was intentional.

VI.

Infringement is a question of fact. *Oakley, Inc. v. Int'l Tropic-Cal, Inc.*, 923 F.2d 167, 169 (Fed. Cir. 1991). A product is infringed if the two designs are substantially the same. *Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1313 (Fed. Cir. 2001). "Two designs are substantially the same if their resemblance is deceptive to the extent that it would induce an ordinary observer, giving such attention as a purchaser usually gives, to purchase an article having one design supposing it to be the other." *Id.*

The test for determining whether a design patent has been the subject of an infringement requires (1) the construction of the patent claim, and (2) a comparison of the construed claim to the accused product. *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995). Comparison with the accused products includes two distinct tests; namely, (1) the "ordinary observer test" and (2) the "point of novelty test." *Contessa Food Products, Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1377 ( Fed. Cir. 2002). The "ordinary observer test" requires the challenger to demonstrate that an ordinary individual would be deceived in a manner that would induce him to purchase the accused device. *Oakley*, 923 F.2d at 169. The "point of novelty test" requires proof that "the accused design appropriates the novelty which distinguishes the patented design from the prior art." *Contessa Food,* 282 F.3d at 1376.

STX argues that, when comparing the design application drawings to the pictures of the STX's "Raptor" head, it is evident to the ordinary observer that the two designs are different.

13

However, Warrior takes a different approach, contending that a comparison of the "Raptor" to the "183 Patent" demonstrates that the two designs are substantially the same in their visual impression. It is  Warrior's view that the "Raptor" head (1) includes sidewall upper rims which curve downward away from the plane as defined by the sidewalls of conventional straight walled heads, (2) incorporates sidewall upper rims that curve back to the plane, and (3) has sidewall lower rims that first curve away from the plane and then back toward the plane.

It is clearly evident that both parties have presented contradictory facts regarding the alleged infringement of the "183 Patent."  As an example, STX contends that the "183" design contains a stylized "W" in the middle of the sidewall, surrounded by two openings on either side. Warrior counters by stating that the "Raptor" head also includes several "W's" in its configurations. However, given that there are genuine issues of a material fact in this matter, the granting of a summary judgment would not be warranted.

## VII.

For the reasons that are stated above, (1) Warrior's "motion for summary judgment that the '216 Patent' is not invalid or unenforceable in view of any purported activities by Robert J. Rule,"(2) STX's "motion for partial summary judgment of unenforceability of '216 [P]atent' due to inequitable conduct," and (3) Warrior's motion that was filed in "opposition to Defendant STX's motion for partial summary judgment of unenforceability of the '216 [Patent] due to inequitable conduct," must be, and are, denied.

14

IT IS SO ORDERED


Dated:   June 12, 2006                                   s/ Julian Abele Cook, Jr.
         Detroit, Michigan                              JULIAN ABELE COOK, JR.
                                                        United States District Court Judge



<u>Certificate of Service</u>

   I hereby certify that on June 12, 2006,  I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

                                             s/ Kay Alford
                                             Courtroom Deputy Clerk


15