UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WARRIOR LACROSSE, INC.,
A Michigan Corporation,

        Plaintiff,

v.

Case Nos. 04-70363 & 04-71842
Honorable Julian Abele Cook, Jr.

STX, L.L.C., a Maryland Limited
Liability Company,

        Defendant.

ORDER

In this case, the Plaintiff, Warrior Lacrosse, Inc. ("Warrior"), contends that the Defendant, STX, L.L.C. ("STX"), infringed two of its patents; namely, U.S. Patent No. 6,561,932 ("932 Patent") and U.S. Patent RE 38,216 ("216 Patent"). These allegations have been denied by STX.

As a reissue of U.S. Patent No. 5,568,925 ("925 Patent"), the 216 Patent is based upon an application that was filed with the United States Patent Office ("USPO") in October 1998, and ultimately issued in August 2003. At issue is a motion for partial summary judgment, in which STX seeks to obtain a judicial validation of its contention that Warrior's allegations of infringement of the 216 Patent are without merit.[1]

I.

---

[1] STX has not moved for the entry of a summary judgment with respect to all of the lacrosse heads or claims. On the other hand, STX has not conceded the infringement issues, believing that the existence of potential disputed issues of fact render the dispute over the lacrosse heads less suitable for a final disposition on summary judgment.

1

A.  Asserted Claims of the 216 Reissue Patent

The 216 Patent concerns the geometry of the head of a lacrosse stick with an open frame construction. The independent claims at issue in this motion specifically pertain to the structure of the sidewalls of the lacrosse head that are required to define a plane at the front side of the frame adjacent to the socket of the lacrosse head. The sidewalls of the lacrosse head curve away from the base plane and then back toward the base plane so as to impart a curved scoop-like geometry to the head when viewed from the side. 216 Patent , col. 2, lines 1-6.

The claims of the 216 Patent rely directly upon Warrior's "Cobra" lacrosse head. In a declaration by Paul Kolada, an expert on the manufactured products that are made by molding plastic, he opined that the front side of the frame of the "Cobra" lacrosse head at the base adjacent to the socket includes a structure which defines and distinctly specifies a plane. According to him, the plane is parallel to the head/handle axis, as separately required by the claims of the 216 Patent.

Warrior points out that it has asserted ten independent claims (Claims 1, 58, 70, 81, 85, 88, 91, 96, 98, and 100) of the 216 Patent against STX's lacrosse heads, with the remaining asserted claims being dependent.[2] These claims can be classified into two groups: to wit, Claims 1, 58[3], 70, 88, 96, and 98 (the structure of the edge of the frame near the projection or

---

[2] STX argues that it is not necessary to discuss these claims specifically since dependent claims are not considered infringed if the underlying claims upon which they depend are not infringed.

[3] According to STX, the following element in Claim 58 is representative of the "front edge" claims:

"[A] projection extending exteriorly from said base for attachment of a handle so as to define a handle/head axis, said front side of said frame at said base adjacent to said attachment

socket must define a plane parallel to the handle/head axis) and Claims 81, 85[4], 91, and 100 (the structure of the upper surface of the projection or the socket must define a plane parallel to the handle/head axis).

The term, "defining a plane," appears in Claims 58, 70, 88, 96, and 98 of the 216 Patent. On the other hand, the term, "which defines a plane," appears in Claims 81, 85, 91, and 100. The Claims 58, 70, 88, 96, and 98 generally require that the base have a front side or top edge for "defining a plane parallel" to the head/handle axis, whereas the Claims 81 and 100 generally require that the projection have "an upper surface which defines a plane" parallel to the handle/head axis. Finally, the Claims 85 and 91 generally require that the socket have "an upper surface defining a plane" parallel to the handle/head axis.

For purpose of convenience in addressing the contested issues in this case, the first set of claims will be identified as the "front edge" claims and the second set will be called the "socket surface" claims. Both parties to this dispute have agreed that the term, "plane parallel to said axis," means "never meets or intersects the axis."

In support of its motion, STX submits that all of the claims require (1) the structure of the "front edge" of the frame at the base, or (2) the upper surface of the socket/projection to define a plane. Thus, it is the position of STX that these claims will not be infringed if (1) the

---

means defining a plane parallel to said axis. . . ."

[4]STX asserts that the following element in Claim 85 is representative of the "socket surface" claims:

"[A] socket extending from said base for attachment of a handle so as to define a handle/head axis, said socket having an upper surface defining a plane parallel to said handle/head axis. . . ."

"front edge" or the "socket surface" of the accused lacrosse head does not have a structure that defines a plane (does not "distinctly specify" a plane), or (2) if such a plane, distinctly specified by the structure of the edge or socket, is not parallel to the handle/head axis.

B.      The Accused Products

The actual structure of the accused products is undisputed. Kolada inspected the lacrosse heads and concluded that all of the accused heads - with one exception - did not have any structure on the front side of the frame at the base of the lacrosse head that distinctly specified a plane which was parallel to the handle/head axis. He also opined that most of the lacrosse heads did not have any structure on the upper surface of the socket which distinctly specified a plane that was parallel to the handle/head axis.

        1.      The Front Side of the Frame at the Base

STX submits that its lacrosse heads, "AV8," "AV8+," "Deuce," "Fuse," "GForce" (without overmolding), "Hype," "Level," "Liquid," "Powerplay," "Profile," "Profile+," "Profile++," "Proton," "Proton+," "Surge," "Whiplash," "X2," and "X2+" do not distinctly specify a plane that is parallel to the handle/head axis. Additionally, STX maintains that none of these lacrosse heads have a front side of the frame at the base which distinctly specifies a plane because multiple planes or a continuum of planes can be specified by the front side of the frame at the base of those heads. Furthermore, STX maintains that its "GForce" (without overmolding) and "Surge" lacrosse heads have an identifiable structure at the front side of the frame at the base that distinctly specifies a plane.

        2.      The Upper Surface of the Projection or Socket

Except for the "Liquid" lacrosse head, the remaining heads have the same basic design

4

for the socket/projection. Specifically, all of these lacrosse heads have the same internal structure; namely, an open socket that is built to fit comfortably into the inside of a standard STX handle. However, STX maintains that the exterior structures of the socket vary widely, with certain heads having essentially round sockets, the other heads possessing a more open structure with side struts, and the remaining heads having both center and side struts.

The "Liquid" lacrosse head tends to be different from the others inasmuch as its socket part is abbreviated. It also consists of an additional plug that fits inside the handle similar to the manner in which the handle fits inside the socket. However, the exterior of the abbreviated socket is round. As such, this socket can be classified with the "AV8" group has having a round socket.

    I.    <u>Side Struts</u>

According to STX, the structure of the oval opening portion of the socket of the lacrosse heads consists of a round upper structure that is unable to define or distinctly specify a plane. The structures of the side struts of the "Level" and "Powerplay" lacrosse heads are curved longitudinally and laterally. Generally, any plane that is defined by the side strut structure of the "Level" would intersect the handle/head axis. The structure of the side struts on the "Powerplay" lacrosse head is curved in such a manner that it could specify an infinite number of planes.

    II.    <u>Center Struts/Side Struts</u>

In his declaration, Kolada indicated that the structure of the oval opening of the socket of the "Deuce," "Factor," "GForce," "Profile," "Profile+," "Profile++" lacrosse heads consisted of a round upper surface that was unable to define or distinctly specify a plane. Additionally,

the structure of the side struts of the "Deuce" is curved in such a manner that they do not distinctly specify a plane. Moreover, the structure of the center strut is rounded, thereby making it unable to distinctly specify a plane. STX maintains that the "GForce," "Profile," "Profile+," and "Profile++" lacrosse heads have a center strut that has a curved cross-section.

### III. Crossed Struts

The structure of the socket of the "Surge" has an oval opening for receiving the handle. Warrior and STX interpret the claim construction by the Court differently. In its motion, STX expresses the view that the challenged claim construction requires the upper surface of the base or projection to create an actual plane. Warrior disagrees and interprets the recognition of the surrounding context of the claim by the Court as merely requiring that the plane, which is parallel to the handle/head axis as viewed from the side, be positioned at the upper surface of the base or projection.

### II.

In evaluating the merit, or lack of merit, of the pending dispositive motion, this Court turns to the Supreme Court which declared twenty years ago that "[o]ne of the principle purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). At the same time, the language within Rule 56© provides that a motion for summary judgment should be granted only if a party "show[s] that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Here, the burden is on the movant to demonstrate the absence of a genuine issue of a material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In assessing a summary judgment motion, the Court must examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the non-moving party. Fed. R. Civ. P. 56©; *see United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984). It is not the role of the Court to weigh the facts. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435-36 (6th Cir. 1987). Rather, it is the duty of the Court to determine "whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Hence, the moving party can show that a genuine factual issue is lacking if it presents evidence which is sufficient to make the issue "so one-sided that [it] must prevail as a matter of law," *id.* at 252, or point to a failure by the non-moving party to present evidence "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Upon such a showing, the non-moving party must act affirmatively to avoid the entry of a summary judgment. Fed. R. Civ. P. 56(e). A mere scintilla of supporting evidence is insufficient. *See Anderson*, 477 U.S. at 252, *quoted in Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). Indeed, "[i]f the evidence is merely colorable or is not significantly probative summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

### III.

The decision by the Court as to whether an accused product infringes a patent claim is,

in the main, a two-step process. *North American Container, Inc. v. Plastipak Packaging, Inc.,* 415 F.3d 1335, 1344 (Fed. Cir. 2005). The first step concerns a determination of the scope and meaning of the patent claims asserted. *Id.* The second step entails the comparison of the accused products to the claims, as construed, and a subsequent determination regarding whether the accused product contains each and every limitation of the claims. *Id.* Infringement requires that every limitation of a claim be met literally or by a substantial equivalent. *Intellicall, Inc. v. Phonometrics, Inc.,* 952 F.2d 1384, 1389 (Fed. Cir. 1992). This Court, having previously construed the meanings of the disputed terms in its *Markman* order on June 2, 2005, has completed its first step mission, and now must undertake the second step in the process.

Warrior's brief rests upon the theory that it is the context of the patent which governs the claim interpretations - not the dictionary definitions. Essentially, it is Warrior's view that the claim construction by the Court in its *Markman* Order is not definitive and can be modified under appropriate circumstances. Pointing to this case, Warrior argues that when viewed from the side, the upper edge or portion of the base or handle socket defines a reference plane parallel to the handle axis, regardless of the actual configuration of the top of the base or socket when viewed from the front or back. Warrior asserts that the context of this patent dictates that the reference plane should always be viewed from the side.

Although Warrior argues that the "context of the patent dictates that the reference plane should always be viewed from the side," it fails to support its argument with any authority and without any reference to the patent itself. In essence, Warrior contends that the terms of the 216

Patent are readily discernable from the language without any reliance upon dictionaries.[5] The Court disagrees.

The Court, through its order in *Markman,* delineated its reasons and determinations regarding term construction for the various claims. It is absurd that Warrior contends that the challenged construction by the Court is not one where "people of ordinary skill in the art" can read the claim within the context of the entire patent. Accordingly, this Court rejects Warrior's argument on this issue and will adhere to its original construction of the claim terms as described in its June 2, 2005 Order.

IV.

In *North American Container*, 415 F.3d at 1335, the geometrical limitation required that an inner wall of the accused products to be "generally convex," and, in doing so, affirmed the entry of a summary judgment of no infringement for all of the accused products that did not meet the "generally convex" limitation. *Id.* at 1349. In *V-Formation, Inc. v. Benetton Group SPA,* 401 F.3d 1307, 1312 (Fed. Cir. 2005), the court affirmed the grant of a summary judgment by the district court because it determined that the claims required releasable attachments and the "rivets in the accused devices [were] not releasable attachments."

STX contends that no infringement of the "front edge" claims has occurred because a limitation is entirely missing from each of the accused structures. STX argues that, when taking Kolada's declaration into consideration, the structure of the front side of the frame at the base of STX's "AV8," "AV8+," "Deuce," "Fuse," "GForce" (without overmolding), "Hype," "Level,"

---

[5] Warrior submits that the claim construction is dictionary-centered, believing that it is not plausible to argue that the 216 Patent claims require that the upper surface of the head create a planar surface parallel to the handle/head axis.

9

"Liquid," "Powerplay," "Profile," "Profile+," "Profile++," "Proton," "Proton+," "Surge," "Whiplash," "X2," and "X2+" lacrosse heads (1) does not distinctly specify a plane, or (2) it specifies a plane that intersects the handle/head axis, and consequently does not meet the structural limitation which requires that the frames define planes that are parallel to the handle/head axis. Specifically, STX asserts that the structural configuration of the front side of the frame at the base for these eighteen lacrosse heads specify multiple planes. STX also submits that these planes are not parallel to the handle/head axis. Warrior challenges this argument, contending that a correct analysis requires a determination of whether the accused lacrosse heads have a certain sidewall configuration with respect to an imaginary reference plane located adjacent the upper surface of the base, socket, or projection, when the plane is viewed from the side and oriented parallel to the handle/head axis.

After a careful review of the record, the Court is satisfied that a genuine issue of a material fact exists regarding the "front edge claims" because it cannot be definitively determined that each limitation of the claims were literally met. Hence, STX's motion with respect to the "front edge" claims must be denied.

V.

STX also submits that the "AV8," "AV8+," "Liquid," "Proton," "Proton+," "X2," and "X2+" have round sockets that cannot, and do not, distinctly specify a plane. The sockets of the "Factor" and "Level" lacrosse heads contain a structure that is located at the upper surfaces of the socket. As such, STX argues that these heads cannot be considered to literally infringe upon any of the "socket surface" claims. Furthermore, STX contends that the structure of the upper surfaces of the "Deuce," "GForce," "Profile," "Profile+," and "Profile++" sockets do not

specify any plane, and therefore, cannot literally infringe upon any of the "socket surface" claims. Finally, STX maintains that the cris-crossing struts of the "Surge"are curved, and consequently, do not distinctly specify a plane.

Warrior does not specifically counter this portion of STX's argument, except to argue that a different analysis is required to determine whether the accused lacrosse heads have a certain sidewall configuration with respect to an imaginary reference plane located adjacent the upper surface of the base, socket, or projection. Notwithstanding the parties respective positions on this issue and after examining the pleadings in this action, the Court must conclude that there exists a genuine issue of a material fact in this litigation.

VI.

For the reasons that are stated above, this Court (1) adheres to its original claim construction as delineated in its order of June 2, 2005, (2) denies STX's motion regarding the "front edge" claims, and (3) denies STX's motion regarding the "socket surface" claims. Accordingly, STX's motion for partial summary judgment of non-infringement of the 216 Patent must be, and is, denied.

IT IS SO ORDERED.

Dated : July 10, 2006                              s/ Julian Abele Cook, Jr.
         Detroit, Michigan                         JULIAN ABELE COOK, JR.
                                                   United States District Court Judge


Certificate of Service

I hereby certify that on July 10, 2006, I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

                                                   s/ Kay Alford
                                                   Courtroom Deputy Clerk