UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WARRIOR LACROSSE, INC.,
A Michigan Corporation,

        Plaintiff,

                                          Case Nos. 04-70363 & 04-71842
v.                                               Honorable Julian Abele Cook, Jr.

STX, L.L.C., a Maryland Limited
Liability Company,

        Defendant.

ORDER

In this case, the Plaintiff, Warrior Lacrosse, Inc. ("Warrior"), has accused the Defendant, STX, L.L.C. ("STX"), of, among other things, infringing upon two of its patents; i.e., U.S. Patent No. 6,561,932 ("932 Patent") and U.S. Patent RE 38, 216 ("216 Patent").[1] STX has denied these allegations.

Before the Court is a motion for the entry of a partial summary judgment, in which STX challenges the validity of the reissue claims 58-101 within the 216 Patent. It is the contention of STX that these reissue claims are invalid because (1) the specification does not contain a written description of the invention, as required by 35 U.S.C. § 112, ¶ 1; (2) none of them cover the subject matter that was recognized by the applicant as his invention, as required by 35 U.S.C. § 112, ¶ 2; (3) they are not applicable to the same invention which was disclosed in the original patent, in

---

[1] The 216 Patent is based upon an application that was filed in 1998 as a reissue of the 925 Patent.

violation of 35 U.S.C. § 251; and (4) the reissue application is based upon a defective reissue declaration, in violation of 37 C.F.R. § 1.175(a)(1).

For the reasons that have been set forth below, STX's motion for partial summary judgment is denied.

I.

Warrior and STX are business competitors, both of whom sell lacrosse sticks in the State of Michigan. In general, lacrosse heads consist of a single structure that contains a socket and a frame. The socket is attached to the lacrosse handle, whereas the frame incorporates a base, a pair of sidewalls, and a scoop. The base consists of a curved surface that contacts a lacrosse ball while it is in the head. The pair of sidewalls connect at one end to the base and at the other end to the scoop. The scoop connects the sidewalls that are opposite to the base and assist the player in scooping the lacrosse balls off the ground. The frame includes string holes for an attachment of a net to catch and throw a lacrosse ball.

A. Curved Scoop-Like Geometry

In the original invention, the lacrosse head consisted of a "scoop" shape, in which the sidewalls of the lacrosse head first curved down and then curved back up rather than an "offset" lacrosse head, in which the sidewalls could only exist in a different plane. As filed in 1995, the original patent application was essentially for a lacrosse head with a "scoop-like" geometry, and not an "offset" geometry. The description of the invention demonstrates that the lacrosse head has a "scoop-like" geometry.[2] The specification explains the necessity for the sidewalls to curve back

---

[2]
Part of the specification for the 925 Patent provides that "both the front sides and the back sides of the frame sidewalls curve away from the base plane in the direction of the frame back side from the base toward the lip, and then back toward the base plane so as to impart a curved scoop-like

up.³  Phillip Naumburg, one of the inventors of the 216 Patent, drew a sketch of the invention⁴ which indicated that his conception required the sidewalls to curve back up so as to form a scoop.

The original 925 Patent application contained three independent claims, each covering three aspects of the invention.⁵  All of the independent claims that have been asserted in this controversy pertain to the reissue claims which were ostensibly directed at the first aspect of the invention; namely, the sidewall curvature.  Claims 2-24 depend upon claim 1⁶, and therefore, also include the

---

geometry to the head when viewed in side elevation.  In the preferred embodiment of the invention, both the front side and the back side of the head have a maximum spacing . . . at about the midpoint of the sidewalls between the base and the lip."

"Both the front sides and back sides of the frame sidewalls curve at substantially constant radii throughout at least one-half of their lengths. . . ."

"[H]ead 22 of the present invention incorporates both a front side edge 46 and a back side edge 50 that curve between base 28 and lip 36 first away from plane 48 in the direction of back side edge 50, and then back toward plane 48."

³
Part of the specification for the 216 Patent provides that "[t]he curved sidewalls of the present invention naturally channel the lacrosse ball into the 'sweet spot' or packet of the net."

⁴
Naumburg's notation on the sketch stated that "[a] contour like this will help define where the ball should sit in a most definitive way."

⁵
 The specification actually describes three aspects of the invention.  The first describes the "scoop-like" geometry.  The second identifies the angle of the contact plane of the lip against the ground.  Finally, the third describes a recessed shoulder at the back side of the base.

⁶
Claim 1 states that "[a] lacrosse head that comprises an open frame having a base with a concave interior surface defining a ball rest, a pair of sidewalls diverging from said base and a lip interconnecting said sidewalls remotely of said base, means carried by said frame for securing a lacrosse net along a back side of said frame, leaving an opposing font side of said frame open for receiving lacrosse balls, and means exteriorly projecting from said base for attachment of a handle so as to define a handle/head axis, said front side of said frame at said base adjacent to said attachment means defining a plane parallel to said axis, both said front side and said back side of said sidewalls curving away from said plane and then back toward said plane from said base toward said lip so as to impart a curved scoop-like geometry to said head when viewed in side elevation."

"scoop-like" geometry limitation. The 925 Patent application included claims 1-58. Although claims 1-24 and 43-58 were originally allowed, the remaining claims 25-32 and 29 were rejected by the United States Patent and Trademark Office. The applicants amended claim 25, and thereafter incorporated the "scoop-like" geometry limitation within claim 33. Subsequently, the examiner authorized the pending claims and the 925 Patent, which was ultimately issued along with all of the other claims that covered the first aspect of the invention; namely, a recitation of the entire "curving away and then curving back so as to impart a curved "scoop-like" geometry limitation. U.S. Patent No. 5,568,925, cols. 5-9.

B.    <u>Upper Surface of a Projection or Socket Defining A Plane</u>

Claims 81-87, 91-94, and 100-101 of the 216 Patent recite the upper surface of the projection (claims 85 and 100) or the socket (claims 85 and 91) which define a plane. Nevertheless, STX maintains that (1) none of the claims within the original 925 Patent application recited an upper surface of a projection or socket that defines a plane which is parallel to the handle/head axis, and (2) no disclosure exists within the text of the patent specification of a plane that is defined by the upper surface of a projection or socket. In fact, the disclosure of the invention suggests that the 925 Patent is limited to a lacrosse head, in which the plane is defined by the front side of the frame at the base.[7] STX submits that the 925 Patent does not proffer a description where it, or its claims,

---

[7] The specification of the 216 Patent provides, in part, that "the front side of the frame at the base, adjacent to the socket . . . defines a base plane parallel to the handle/head axis." 216 Patent col. 1, line 61-65. The 925 Patent indicates, in part that "[t]he front side edge 46 of that portion of the base immediately adjacent to the socket 40 defines a plane 48 that is offset from, but parallel to handle/head axis 42." Part of claim 1 of the 925 Patent states that "said" from side of said frame at said base adjacent to said attachment means a defining a plane parallel to said axis." Part of claim 25 of the same Patent states that "said front side of said frame at said base adjacent to said attachment means defining a plane parallel to said axis."

are defined by the upper surface of the projection or the upper surface of the socket which is offset from, but parallel to the handle/head axis.

C.     Naumburg's Depositions

During his deposition in another case (*Warrior Lacrosse, Inc. v. J. DeBeer & Son, Inc*), Naumburg testified that he had conceived the idea of the curved lacrosse head invention during the 1970's. He also stated that his envision entailed the head curving away, and then subsequently curving back up. Furthermore, he drew a sketch of the invention and acknowledged that the sidewalls curving up was an essential element of the invention. Although he considered the upward curve to have been a crucial aspect of the invention, his reissue declaration stated that it was "not necessary."

II.

The Supreme Court has opined that "[o]ne of the principle purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). At the same time, the language within Rule 56© provides that a motion for summary judgment should be granted only if a party "show[s] that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Here, the burden is on the movant to demonstrate the absence of a genuine issue of a material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In assessing a summary judgment motion, the Court must examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the non-moving party. Fed. R. Civ. P. 56©; *see United States v. Diebold, Inc.*, 369 U.S. 654, 655

5

(1962); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984). It is not the role of the Court to weigh the facts. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435-36 (6th Cir. 1987). Rather, it is the duty of the Court to determine "whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Hence, the moving party can show that a genuine factual issue is lacking if it presents evidence which is sufficient to make the issue "so one-sided that [they] must prevail as a matter of law," *id.* at 252, or point to a failure by the non-moving party to present evidence "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Upon such a showing, the non-moving party must act affirmatively to avoid the entry of a summary judgment. Fed. R. Civ. P. 56(e). A mere scintilla of supporting evidence is insufficient. *See Anderson*, 477 U.S. at 252, *quoted in Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). Indeed, "[i]f the evidence is merely colorable or is not significantly probative summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

### III.

Generally, a patent can be declared invalid if it fails to satisfy the written description requirement within the language of the patent specification. *Rochester v. G.D. Searle & Co.,* 358 F.3d 916, 927 (Fed. Cir. 2004). Additionally, a determination of whether a claim recites the subject matter which the applicant regards as his invention, and if it is sufficiently definite so as to satisfy the requirements of 35 U.S.C. § 112, paragraph 2, are issues of law that must be resolved by the

Court. *Allen Engineering Corp. v. Bartell Industries, Inc.,* 299 F.3d 1336, 1344 (Fed. Cir. 2002).

A patentee has the right to ask for a reissue examination if he "believes the original patent to be wholly or partially inoperative or invalid by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than the patentee had the right to claim in the patent." 37 C.F.R. § 1.175 (2006). When filing a reissue application, a patentee must file an oath or a declaration which explains the reason(s) for the reissue. *Nupla Corp. v. IXL Mfg. Co.,* 114 F.3d 191, 193 (Fed. Cir. 1997). The declaration must include (1) the date when the applicant believed the original patent to have been wholly or partially inoperative or invalid, as well as the bases for the allegation, (2) the date when the patent became inoperative or invalid by "reason of the patentee claiming more or less than he had the right to claim in the patent," and distinctly specifying the excess or deficiency within the original claims, and (3) specifying the errors relied upon, and how they arose or occurred. *Id.* Case law also requires a reissue application to include declarations "to specify every difference between the original and reissue claims." *Id.* A reissue application is essentially a renewal in the prosecution of all claims. *Hewlett-Packard Co. v. Bausch & lomb Inc.,* 882 F.2d 1556, 1563d (Fed. Cir. 1989). However, the reissue procedure is available only to correct an error in the claims in the patents as originally issued. *Nupla Corp.* ,114 F.3d at 195. The reissue regulations require a full explanation of each "error." *Id.*

The specifications of a reissue application must "contain a written description of the invention." 35 U.S.C. § 112, ¶ 1 (2006). In order to fulfill this requirement, the patent specification must describe an invention in sufficient detail "such that one of the ordinary skill in the art can conclude that the inventor invented what is claimed." *Cordis Corp. v. Medtronic Ave, Inc.,* 339 F.3d 1352, 1364 (Fed. Cir. 2003). The purpose of the written description requirement goes beyond

7

merely explaining how to create and utilize an invention. *Vas-Cath Inc. v. Mahurkar,* 935 F.2d 1555, 1563-64 (Fed. Cir. 1991). Furthermore, whether the written description requirement has been satisfied is a question of fact which must be assessed on a case-by-case basis. *Id.*

In the specification, an applicant is not required to describe every conceivable and possible future embodiment of the invention. *Rexnord Corp. v. Laitram Corp.,* 274 F.3d 1336, 1344 (Fed. Cir. 2001). A specification may broadly claim an invention without describing all of the particularities that are encompassed by the claim. *Id.* There are some instances in which drawings may constitute an adequate written description if they describe the claim and accurately convey that which the patentee actually invented. *Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.,* 291 F.3d 1317, 1322 (Fed. Cir. 2003). However, the test for the sufficiency of support in the original application is whether the disclosure within the reissue application reasonably establishes that the inventor had possession of the invention at that time of the subsequently claimed subject matter. *Vas-Cath Inc. v. Mahurkar,* 935 F.2d at 1563.

IV.

STX asserts that claims 58-101 are invalid because they violate 35 U.S.C. § 112, ¶ 1,[8] in that they fail to include a written description of the invention in the specification. The invention, which

---

[8]

35 U.S.C. § 112, ¶ 1 provides that "the specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention."

is described in the specification (including the claims filed), describes the device as a lacrosse head with a scooped shape, i.e., a lacrosse head with sidewalls that first curve down, and subsequently curve back up.  STX contends that there are no descriptions or drawings within claims 58-101 which support this specification.  STX also maintains that Warrior's reissue claims, in reality, seek to impermissibly broaden the scope of the invention even though the original patent specification made it clear that the invention required an upward curving scoop. As a consequence, it is the position of STX that all of these claims are invalid because none of them include a recitation of the upward curve, an element which Naumburg believed to be essential to the invention.

According to STX, 35 U.S.C. § 112, paragraph 1 also invalidates claims 81-87, 91-94, and 100-101 since each of these claims recite a plane which is defined by the upper surface of a projection (claims 81-100) or the upper surface of a socket (claims 85 and 91).  STX submits that there is no disclosure in the original application, which defines a plane that is parallel to the handle/head axis.  Thus, STX posits that claims 81-87, 91-94, and 100-101 are invalid under 35 U.S.C. § 112, ¶ 1 because there is no written description of the invention for those claims in the specification.

Warrior challenges these arguments by pointing out that the United States Patent and Trademark Office has already determined that the new 216 Patent claims possess the requisite written descriptive support, as required by 35 U.S.C. § 112, ¶ 1.  Moreover, Warrior proffers the declaration of Jesse Hubbard,[9] who opined that as long as the sidewalls are lowered in the lacrosse heads, it is irrelevant whether they continue to curve down or go straight across the head and

---

[9] Hubbard is the Director of the men's lacrosse department at Warrior.

subsequently curve back up. He insists that the curving upward of the sidewalls in the second half of the head is not necessary in order to achieve the advantages that are necessary for the sport.[10] Warrior also proffers the declaration of Naumburg's co-inventor, David Morrow, who opined that "the important aspect of our development was the lowering of the sidewalls of the head with respect to the sidewall plane of traditional straight wall heads." Essentially, he did not believe that the curving back up of the sidewalls was essential to the success of the lacrosse stick's performance. Warrior has offered the declarations of these two individuals in an apparent effort to demonstrate that persons of ordinary skill within the industry can easily understand the disclosure statements relating to the 216 Patent.

Warrior also proclaims that Naumburg had never reached a definitive conclusion with regard to the shape of the lacrosse head. Although believing that the curving back up feature was the essential element of the invention, Naumburg insists that he had always considered this invention to be a "work in progress." Moreover, Morrow expressed the view that neither he nor Naumburg had ever reached a definitive conclusion about the configuration for the second half of the lacrosse head. Thus, when viewing the evidence relating to this narrow issue in a light that is most favorable to Warrior, the Court concludes that there is a genuine issue of a material fact regarding the alleged failure of the applicant to comply with the written description requirement of 35 U.S.C. § 112, ¶ 1, as it applied to claims 58-101.

---

[10] STX argues that Hubbard's assertion is irrelevant with regard to the written description in the 216 Patent since it discusses the key component of the Warrior lacrosse head which is commercially known as the "Cobra." Additionally, STX says that Hubbard has failed to (1) make any assertion that an offset is the same invention as a "scoop," and (2) provide any evidence which would dispute the testimony of Naumburg who purportedly acknowledged that his reissue declaration was possibly incorrect.

V.

35 U.S.C. § 112, ¶ 2 requires that the specifications of a reissue application must conclude with "claims of particularity pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 11, ¶2 (2006).  The determination of whether a claim recites "the subject matter which the applicant regards as his invention" in accordance with the statute is a question of law.  *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1377 (Fed. Cir. 2000). Essentially, such an inquiry requires a two step process; namely, (1) there must be an identification of the claims that the inventor asserts to be his invention, and (2) the identification must be specified with sufficient particularity and definiteness.  *Id.* "Determining whether a claim is definite requires an analysis of whether one skilled in the art would understand the bounds of the claim when read in light of the specification." *Id.* at 1378.  Therefore, the inquiry should focus on whether the claims, as interpreted in view of the written description, adequately inform the public of the patentee's right to exclude.  *Id.* at 1379.

In *Gentry Gallery Inc. v. Berkline Corp.,* 134 F.3d 1473 (Fed. Cir. 1998), the court determined that the inventor "considered the location of the recliner controls to be an essential element of his invention[,]" *Gentry*, 134 F.3d at 1479-80, and, thereafter, invalidated those claims that had not been included within the limitation.  *Id.*  However, the *Gentry* Court emphasized the proposition that "a broad claim is invalid when the entirety of the specification clearly indicates that the invention is of a narrower scope."  *Cooper Cameron,* 291 F.3d at 1323.

Although Naumburg' deposition was taken during another lawsuit, he was also deposed about the claims in this litigation. According to STX, he has consistently maintained that this invention consisted of a lacrosse head with a "scoop-like" geometry; i.e., a lacrosse head with

11

sidewalls that curve down, and then curve back up. However, claims 58-101 recite, in different variations, a lacrosse head with an "offset" geometry; that is, a lacrosse head with sidewalls which curve down, but do not curve back up. Naumburg also acknowledged that the sidewalls which curve up after curving down are an essential element of his invention. STX argues that claims 58-101 of the 216 Patent are invalid because they do not cover the specifications which the applicant regards as his invention, as required under 35 U.S.C. § 112, ¶ 1.

Warrior submits that during the time period in which the original patent application was filed, Naumburg opined that the curving down feature of the lacrosse head was the only essential element of the invention. However, STX contends that, if Naumburg had fully understood his declaration, he would not have signed an instrument which indicated that the lacrosse head consisted of sidewalls that curved down without any subsequent upward curvature.

It is obvious from a reading of these arguments that both parties disagree over those factors which the inventor considered to be his invention during the original patent filing period. Each side has proffered different forms of evidence in support of their respective positions. Thus, the Court must and does conclude that there is a genuine issue of a material fact regarding the question of whether the inventor's invention was specified in the reissue application with sufficient particularity and definiteness. Hence, the entry of a summary judgment would not be appropriate at this time.

VI.

The claims of the reissue application must apply to the same invention as the claims within the original patent. 35 U.S.C. § 251 (2006)[11]. The invention must appear on the face of the

---

[11] 35 U.S.C. § 251 provides, in part, that "[w]henever any patent is, through error without any

instrument that what is covered by the reissue application was intended to have been covered and secured by the original. *U.S. Industrials Chemicals, Inc. v. Carbide & Carbon Chemicals Corp.,* 315 U.S. 668, 676 (1942).

In the 925 Patent application, the applicants described and claimed a lacrosse head with a "scoop-like" geometry. However, STX maintains that claims 58-101 of the reissue patent application have created a different invention; namely, a lacrosse head with an "offset" geometry. According to STX, the original specification, the original claims, and Naumburg's testimony clearly demonstrate that the invention which the applicants chose to claim in the 925 Patent consisted of a "scooped-like" lacrosse head, and not an "offset" lacrosse head.

Warrior contends that, because the inventors (Naumburg and Morrow) claimed less than they had a right to assert in the original 925 Patent, they are authorized under the patent statute to seek reissue and broaden their claims. Essentially, Warrior submits that the inventors sought to obtain a broadening reissue of their 925 Patent in order to cover material that had already been invented and disclosed. Moreover, Warrior maintains that the inventors' reissue application was designed to include information that had been inadvertently omitted from the 925 Patent. Hence, it is Warrior's argument that STX has failed to present any compelling evidence that the challenged reissue claims are for an invention which is independent and distinct from the language within the 925 Patent.

After reviewing these arguments in a light that is most favorable to Warrior for the purpose

---

deceptive invention, deemed wholly or partly inoperative or invalid, by reason of defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Director shall . . . reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent. No new matter shall be introduced into the application for reissue."

13

of resolving this issue, the Court concludes that STX has failed to satisfy its burden of demonstrating that the reissue application contained new information which did not pertain to a broadening reissue. Accordingly, there is a genuine issue of a material fact regarding this matter.

VII.

When assessing the applicability of 35 U.S.C. § 112, ¶ 2 to this controversy, it is inappropriate to consider the testimony of an inventor that is obtained during the course of a litigation. *Solomon*, 216 F.3d at 1379. However, it is appropriate for an inventor to testify regarding what was intended to be conveyed by the specification and covered by the claims. *Voice Techs. Group, Inc. v. VMC Sys. Inc.,* 164 F.3d 605, 615 (Fed. Cir. 1999) Typically, a more limited range of evidence should be considered in evaluating the validity - rather than the patentability - of an invention pursuant to 35 U.S.C. § 112. Additionally, it is not unusual for there to be a significant difference between what an inventor considers to be his patented invention and the ultimate scope of the claims that were allowed by the United States Patent and Trademark Office. Patent specifications are essentially written for those who have skilled knowledge in the area. Moreover, the specifications only require that the inventor describe the best method known to him at the time of the making and use of the invention. *SRI Intern v. Matsushita Elec. Corp. Of America,* 775 F.2d 1107, 1121 (Fed. Cir. 1985).

STX argues that the declaration in this matter is invalid, pointing to the recognition by Naumburg that a discrepancy existed between the reissue declaration and his testimony. According to STX, Naumburg, despite having testified during a deposition that it was necessary for the sidewalls curve back up, the reissue declaration declared that this requirement was not necessary.

STX maintains that Naumburg testified regarding what was initially invented; namely, that the original invention included an upwardly curved scoop. On the other hand, Warrior maintains that this argument by STX (i.e., since the claims by Warrior are currently broader than the previous embodiment, the applicants did not invent the claimed device) is meritless.

Although Naumburg's deposition testimony was taken for possible future litigation, its main purpose was decipher the intent to be conveyed by the specification, and subsequently covered by the claims. Consequently, the Court concludes that Naumburg's testimony is relevant and probative. Naumburg acknowledged that he had never definitely concluded that it was necessary for the sidewalls to curve back up. Furthermore, Naumburg indicated in his second supplemental declaration that the applicants had claimed less than they had a right to claim, and the newly added claims only required that the sidewall curve away from the plane. Consequently, Naumburg has satisfied the requirements of 37 C.F.R. § 1.175(a) which pertains to the examination procedures regarding reissue applications. Given that what Naumburg considered to be his invention is presently disputed, it naturally follows that STX's position (to wit, the reissue declaration was defective because it was contrary to what he believed was his invention) is debatable. Accordingly, there is a genuine issue of a material fact regarding the validity of the declaration.

## VIII.

For the reasons that are stated above, the Court denies STX's motion for summary judgment because there are genuine issues of material facts regarding whether the challenged claims 58-101 (1) complied with the written description requirement, (2) recited that which the applicant considered to be his invention, (3) are for the same invention, as described in the original patent application, and (4) are invalid because the reissue declaration is inconsistent with Naumburg's

testimony.

       IT IS SO ORDERED.

Dated : September 14, 2006                     s/ Julian Abele Cook, Jr.
      Detroit, Michigan                   JULIAN ABELE COOK, JR.
                                           United States District Court Judge


                                  Certificate of Service

     I hereby certify that on September 14,  2006,  I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

                                          s/ Kay Alford
                                          Courtroom Deputy Clerk